UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| BOARD OF TRUSTEES, SHEET METAL WORKERS' NATIONAL PENSION FUND, BOARD OF TRUSTEES, INTERNATIONAL TRAINING INSTITUTE FOR THE SHEET METAL AND AIR CONDITIONING INDUSTRY, BOARD OF TRUSTEES, SHEET METAL OCCUPATIONAL HEALTH INSTITUTE TRUST, BOARD OF TRUSTEES, SHEET METAL WORKERS' INTERNATIONAL ASSOCIATION SCHOLARSHIP FUND, and BOARD OF TRUSTEES, NATIONAL ENERGY MANAGEMENT INSTITUTE 8403 Arlington Boulevard, Suite 300 Fairfax, Virginia 22031<br><br> Plaintiffs,<br><br> v.<br><br>BURRIS CONSTRUCTION COMPANY, LLC 8 East Main Street Moorestown, NJ 08057<br><br>and<br><br>KBWB CONSTRUCTION COMPANY, LLC 1253 Glen Avenue Moorestown, NJ 08057<br><br>Defendants. | Civil Action No. 1:19-cv-1499<br><br>**Additional Required Service under 29 U.S.C. § 1132(h) to:**<br><br>**U.S. Department of Labor Attn: Assistant Solicitor  for Plan Benefits Security 200 Constitution Ave., N.W. Washington, DC 20002**<br><br>**U.S. Department of Treasury Attn: Secretary of the Treasury 1500 Pennsylvania Avenue, NW Washington, D.C. 20220** |

**COMPLAINT FOR CONTRIBUTIONS, INTEREST, LIQUIDATED DAMAGES, AND ATTORNEYS' FEES AND COSTS**

Plaintiffs, the separate and individual Boards of Trustees of the Sheet Metal Workers' National Pension Fund ("NPF"), the International Training Institute for the Sheet Metal and Air Conditioning Industry ("ITI"), the Sheet Metal Occupational Health Institute Trust ("SMOHIT"),

1

the Sheet Metal Workers' International Association Scholarship Fund ("the Scholarship Fund") and the National Energy Management Institute Committee ("NEMIC" and together with NPF, ITI, SMOHIT, and the Scholarship Fund referred to as "the Funds"), hereby complain as follows:

## Introduction

1. This is a civil action brought by employee benefit plans/trust funds or joint-labor management organizations, and by the trustees of the Funds, pursuant to Sections 502(a)(3), (d)(1), (g)(2) and 515 of the Employee Retirement Income Security Act of 1974, *as amended* ("ERISA"), 29 U.S.C. §§ 1132(a)(3), (d)(1), (g)(2), and 1145, and Section 301(a) of the Labor Management Relations Act of 1947, *as amended* ("LMRA"), 29 U.S.C. § 185. The Funds seek a monetary judgment against Defendants awarding delinquent contributions, accrued interest, liquidated damages, audit fees, and attorneys' fees and costs, as well as those amounts that become due and owing through the date of judgment, pursuant to Sections 502 and 515 of ERISA, 29 U.S.C. §§ 1132 and 1145, Section 301 of the LMRA, 29 U.S.C. § 185, the collective bargaining agreement, and the Trust Documents governing the Funds.

## Jurisdiction and Venue

2. Jurisdiction is conferred upon this Court by Sections 502(e) and (f) of ERISA, 29 U.S.C. §§ 1132(e) and (f), and Section 301(c) of the LMRA, 29 U.S.C. § 185(c). Jurisdiction also lies under 28 U.S.C. § 1331.

3. Venue is proper under Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), as the Plaintiff Funds are administered in this district with their principal place of business in Fairfax, Virginia. Venue is also properly laid in this district because it is here that Defendants breached the relevant provisions of the collective bargaining agreement, and consequentially violated Section

515 of ERISA, 29 U.S.C. § 1145, because it is within this district that the relevant provisions of the collective bargaining agreement are required to be performed.

4.    Pursuant to Section 502(h) of ERISA, 29 U.S.C. § 1132(h), a copy of this Complaint will be served upon the Secretary of United States Department of Labor and the Secretary of the United States Department of the Treasury by certified mail on or about the date of filing.

## Parties

5.    Plaintiff Board of Trustees, Sheet Metal Workers' National Pension Fund ("NPF") is the collective name of the trustees of the Sheet Metal Workers' National Pension Fund. The NPF is an employee pension benefit plan within the meaning of Sections 3(2) and (3) of ERISA, 29 U.S.C. § 1002(2), (3), and a multiemployer plan within the meaning of Section 3(37)(A) of ERISA, 29 U.S.C. § 1002(37)(A), established and maintained for the purpose of providing pension benefits to eligible employees. The NPF is, and at all times material herein has been, a jointly administered trust fund established pursuant to Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5). The trustees of the NPF are duly authorized trustees whose duty it is to administer the NPF for the benefit of the participants and beneficiaries of the NPF. The trustees are "fiduciaries" within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and are empowered to bring this action pursuant to Sections 502(a)(3) and 502(g)(2) of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1132(g)(2). The trust, its trustees and plan are individually or jointly referred to as "NPF" in this Complaint. The NPF is administered at 8403 Arlington Boulevard, Fairfax, Virginia 22031.

6.    Plaintiff Board of Trustees, International Training Institute of the Sheet Metal and Air Conditioning Industry ("ITI") is the collective name of the trustees of the International

Training Institute of the Sheet Metal and Air Conditioning Industry. ITI is an employee welfare benefit plan within the meaning of Sections 3(1) and (3) of ERISA, 29 U.S.C. § 1002(1), (3), and a multiemployer plan within the meaning of Section 3(37)(A) of ERISA, 29 U.S.C. § 1002(37)(A), established and maintained for the purpose of providing apprenticeship training and educational benefits to eligible employees. ITI is, and at all times material herein has been a jointly administered trust fund established pursuant to Section 302(c)(6) of the LMRA, 29 U.S.C. § 186(c)(6). The trustees of ITI are duly authorized trustees whose duty it is to administer the plan for the benefit of the participants and beneficiaries of ITI. The trustees of ITI are "fiduciaries" within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and are empowered to bring this action pursuant to Sections 502(a)(3) and 502(g)(2) of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1132(g)(2). The trust, its trustees and plan are individually and jointly referred to as "ITI" in this Complaint. ITI is administered at 8403 Arlington Boulevard, Fairfax, Virginia 22031.

7. Plaintiff Board of Trustees, Sheet Metal Occupational Health Institute Trust ("SMOHIT") is collectively the name of the trustees of the Sheet Metal Occupational Health Institute Trust. SMOHIT a jointly labor-management health and safety organization serving the sheet metal industry established under 29 U.S.C. § 186(c)(9). The trust and its trustees are individually and jointly referred to as "SMOHIT" in this Complaint. SMOHIT is administered at 8403 Arlington Boulevard, Fairfax, Virginia 22031.

8. Plaintiff Board of Trustees, Sheet Metal Workers' International Association Scholarship Fund ("Scholarship Fund") is the collective name of the Sheet Metal Workers' International Association Scholarship Fund. The Scholarship Fund is an employee welfare benefit plan within the meaning of Sections 3(1) and (3) of ERISA, 29 U.S.C. §§ 1002(1), (3), and a

multiemployer plan within the meaning of Section 3(37)(A) of ERISA, 29 U.S.C. § 1002(37)(A), established and maintained for the purpose of providing funded scholarship benefits. The Scholarship Fund is, and at all times material herein has been, a jointly administered trust fund established pursuant to Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5). The Trustees of the Scholarship Fund are duly authorized Trustees whose duty it is to administer the Scholarship Fund for the benefit of the participants and beneficiaries of the Scholarship Fund. The Trustees of the Scholarship Fund are "fiduciaries" within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and are empowered to bring this action pursuant to Sections 502(a)(3) and 502(g)(2) of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1132(g)(2). The trust, its Trustees and plan are individually and jointly referred to as the "Scholarship Fund" in this Complaint. The Scholarship Fund is administered at 8403 Arlington Boulevard, Fairfax, Virginia 22031.

9. Plaintiff Board of Trustees, National Energy Management Institute Committee ("NEMIC") is the collective name of the trustees of the National Energy Management Institute Committee. NEMIC is a labor management committee established pursuant to Section 302(c)(9) of the LMRA, 29 U.S.C. § 186(c)(9), that is funded by contributions under various collective bargaining agreements. The committee and its trustees are jointly and severally referred to as "NEMIC" in this Complaint. NEMIC is administered at 8403 Arlington Boulevard, Fairfax, Virginia 22031.

10. The trustees of the Plaintiff Funds bring this action in their collective names or, as necessary or appropriate, in the name of the respective trusts or plans, and their participants, and beneficiaries pursuant to Federal Rule of Civil Procedure 17.

11. At all times relevant to this action, Defendant Burris Construction Company, LLC ("Burris") has been an employer within the meaning of 29 U.S.C. § 152(2), and Section 3(5) of

ERISA, 29 U.S.C. § 1002(5), and has been engaged in an industry affecting commerce within the meanings of Sections 3(11) and (12) of ERISA, 29 U.S.C. §§ 1002(11) and (12). Upon information and belief, at all times relevant to this action, Burris has been incorporated in the state of New Jersey with a principal place of business at 8 East Main Street, Moorestown, NJ 08057 or 1253 Glen Avenue, Moorestown, NJ 08057.

12. At all times relevant to this action, Defendant KBWB Construction Company, LLC ("KBWB") has been an employer within the meaning of 29 U.S.C. § 152(2) and Section 3(5) of ERISA, 29 U.S.C. § 1002(5), and has been engaged in an industry affecting commerce within the meanings of Sections 3(11) and (12) of ERISA, 29 U.S.C. §§ 1002(11) and (12). Upon information and belief, at all times relevant to this action, KBWB has been incorporated in the state of New Jersey with a principal place of business at 1253 Glen Avenue, Moorestown, NJ 08057.

### Collective Bargaining Agreements and Funds' Governing Documents

13. At all times relevant to this action, Burris' employees were represented for the purposes of collective bargaining by the Sheet Metal Workers' International Association, Local Union No. 27 ("Local 27") a labor organization representing employees in an industry affecting interstate commerce.

14. At all times relevant to this action, Burris was signatory to, and bound by, a collective bargaining agreement ("CBA" or "Agreement") with the Local 27. Pursuant to the Agreement, Burris was obligated to submit monthly remittance reports and fringe benefit contributions to the Funds for all hours worked or paid on behalf of their covered employees within the jurisdiction of Local 27.

15. Although KBWB is not signatory to the CBA with Local 27, KBWB is an alter ego of Burris and/or constitutes a single employer with Burris and thus is obligated to contribute to the Funds for covered employees.

16. At all relevant times, Defendants Burris and KBWB shared an interrelation of operations, common management, centralized control of labor relations, business purpose, equipment, customers, and common ownership. Specifically:

    a. William Burris is a principal officer of both Defendant corporations. William Burris was the sole owner, officer and manager of Burris. William Burris is also co-chief executive officer and co-chairman of KBWB.

    b. Defendants employ the same classification or similar classification of employees, those employees have the same or similar training, and Defendants perform the same type of work in the same industry in the same geographic market.

    c. Defendants share an address at 1253 Glen Avenue, Moorestown, NJ 08052 as listed on their corporate filings.

    d. KBWB uses Burris' equipment.

    e. Defendants have an overlapping workforce, where employees work interchangeably between the two companies.

    f. Though Burris signed the CBA, KBWB filed remittance reports with the Funds, provided contributions to the Funds for Burris' employees, and issued the paychecks to Burris' covered employees. Burris employees were under the control of KBWB.

    g. William Burris confirmed in sworn testimony in a prior proceeding that (1) KBWB Construction did business as Burris Construction Company, (2) Burris employees that performed work were controlled by KBWB, (3) KBWB was responsible for payroll and processing

as related to Burris employees, (4) Burris was the party to collective bargaining agreements with Local 27 but that Burris' financial records did not reflect the collective bargaining obligations and liabilities, and (5) the benefit obligations were the obligation of KBWB.

17. KBWB was established for the purpose of evading Burris's obligations under its collective bargaining agreement, including its obligation to remit pension contributions.

18. As an alter ego of Burris, KBWB is an employer within the meaning of 29 U.S.C. § 152(2) and Section 3(5) of ERISA, 29 U.S.C. § 1002(5), bound to the CBA with Local 27, and jointly and severally liable for any obligations of Burris arising from the CBA.

19. Pursuant to the CBA, Burris and KBWB are obligated to abide by the terms and conditions of the Trust Agreements establishing the Funds, including any amendments thereto and policies and procedures adopted by the Boards of Trustees ("Trust Document").

20. Payments due to the Funds are calculated separately for each Fund on remittance reports required to be prepared monthly by each contributing employer. This is a self-reporting system and the Funds rely on the honesty and accuracy of employers in reporting hours worked and paid, and in reporting the contributions owed for work by employees.

21. Without the information contained in the remittance reports, the Funds cannot determine the entire amount of the monthly contributions due to the Funds or the employees' eligibility for benefits.

22. The completed remittance reports and accompanying contribution payments must be submitted to the Funds no later than the twentieth (20th) day after the end of each month during which covered work was performed and are delinquent if received thereafter.

23. Article V, Section 6(a) of the governing Trust Agreement provides that a participating employer is liable for an Exit Contribution to the NPF if it: (i) ceases to have an

obligation to contribute to the NPF, and (ii) had an event of withdrawal under Title IV of ERISA as a result of the cessation of its obligation to contribute but was not required to pay withdrawal liability under Title IV of ERISA.

24. Article V, Section 6(b) of the governing Trust Agreement provides that "[b]y agreeing to contribute, continuing to contribute, or continuing to be obligated to contribute, to the Fund, each Employer agrees to pay an Exit Contribution in accordance with Section 6. The Employer's obligation to pay an Exit Contribution under this Section 6 is independent of the Employer's collective bargaining agreement and continues to apply after the termination of the collective bargaining agreement (notwithstanding any language to the contrary in the collective bargaining agreement)."

25. An employer meeting the conditions described in Article V, Section 6(a) of the Trust Agreement shall pay an Exit Contribution to the NPF after the expiration of its collective bargaining agreement if it ceases to have an obligation to contribute to the NPF as a result of such expiration, and it did not enter into a successor collective bargaining agreement requiring contributions to the NPF.

26. The amount of an employer's Exit Contribution is equal to the amount of the employer's contributions due for the 36-month period preceding the month in which the employer ceased to have an obligation to contribute to the NPF.

27. An Exit Contribution is required to be paid to the NPF no later than the 20th day of the month following the month in which the Fund assessed the Exit Contribution by sending written demand for the payment of the employer's Exit Contribution.

28. Pursuant to Article V, Section 6(g) of the Trust Agreement, an Exit Contribution is a type of contribution that an employer is obligated to pay under the Trust Agreement. As such, an

employer's failure to make an Exit Contribution constitutes a delinquency and is treated in the same manner as any other delinquent contribution.

29. Pursuant to Sections 502 and 515 of ERISA, 29 U.S.C. §§ 1132 and 1145, the Agreement, the Trust Documents, and Section 301 of the LMRA, 29 U.S.C. § 185, if Defendant fails to timely submit the contractually required remittance reports and contribution payments or Exit Contribution, and the Funds file a lawsuit to recover the unpaid contributions or Exit Contribution, Defendant is required to pay the following amounts to the Funds:

    a. Interest on the delinquent contributions at a rate of .0233% per day, compounded daily;

    b. Liquidated damages equal to the greater of: fifty dollars ($50.00) or ten percent (10%) of the contributions paid after the due date for payment of such contributions, but before litigation is initiated;

    c. Liquidated damages equal to the greater of interest on the delinquent contributions at the above rate or twenty percent (20%) of the delinquent contributions owed upon commencement of litigation; and

    d. The attorneys' fees and costs incurred by the Funds in pursuing the delinquent amounts, including the attorneys' fees and costs in this action.

30. Because it is an alter ego, KBWB is also jointly and severally liable for a prior judgment against Burris.

31. The Funds filed a previous suit against Burris in this Court on December 22, 2016 for unpaid contributions, interest, and liquidated damages due for the period of April 2014 through November 2016. *See* Case No. 1:16-cv-1595-LO-JFA.

32. Burris failed to file an answer or other responsive pleading and the Funds filed a motion for default judgment on April 7, 2017. *See* Case No. 1:16-cv-1595-LO-JFA; Dkt. No. 7.

33. The Funds' motion was granted and judgment by default was entered against Burris on June 21, 2017 in the amount of $44,577.88. *See* Dkt. No. 14. Burris has not appealed this judgment.

34. Burris has failed to make any payment on the judgment and the entire amount of the judgment plus post judgment interest remain outstanding. KBWB is jointly and severally liable for the judgment amounts.

35. Additionally, the NPF's records show that Burris ceased to have an obligation to contribute to the NPF and had an event of withdrawal under Title IV of ERISA as a result of the cessation of its obligation to contribute before December 31, 2016, but was not required to pay withdrawal liability under Title IV of ERISA. Therefore, Burris also owes an exit contribution pursuant to V, Section 6(a) of the governing Trust Agreement. As an alter ego and/or successor, KBWB is jointly and severally liable for the exit contribution.

## Count I - Prior Judgment

36. Plaintiffs reallege and incorporate Paragraphs 1 through 35.

37. This claim arises under Sections 502(a)(3) and 515 of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1145, and Section 301 of the LMRA, 29 U.S.C. § 185.

38. A judgment of $44,577.88 was entered against Burris in this Court on June 21, 2017 under Sections 502(a)(3) and 515 of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1145, and Section 301 of the LMRA, 29 U.S.C. § 185 for unpaid contributions, interest, and liquidated damages due for the period of April 2014 through November 2016.

39. Burris has failed to make payment on the judgment and the entire amount plus post judgment interest at a rate of 8.5% per year remains outstanding.

40. Burris's continued failure to pay the amounts due have caused irreparable harm to the plan participants in the form of loss of earnings and expenses of the Funds, endangered the eligibility of covered members' pension benefits, and other harm. Burris's failure and refusal to comply with its obligations creates an atmosphere in the industry that encourages other employers to do the same.

41. Burris and KBWB are alter egos and/or constitute a single employer. As such, KBWB is jointly and severally liable for the prior judgment. Accordingly, the Funds seek a judgment against KBWB in the amount of $44,577.88 plus post-judgment interest.

### Count II - Exit Contribution

42. Plaintiffs reallege and incorporate Paragraphs 1 through 41.

43. This claim arises under Sections 502(a)(3) and 515 of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1145, and Section 301 of the LMRA, 29 U.S.C. § 185.

44. Burris is obligated under the terms of the CBA, Trust Agreement, and Section 515 of ERISA to pay an Exit Contribution if Burris (i) ceases to have an obligation to contribute to the NPF, and (ii) had an event of withdrawal under Title IV of ERISA as a result of the cessation of its obligation to contribute, but was not required to pay withdrawal liability under Title IV of ERISA. The Exit Contribution is equal to the contributions due from Burris for the 36-month period preceding the month in which it ceased to have an obligation to contribute to the NPF.

45. Pursuant to Article V, Section 6 of the Trust Agreement, Burris' obligation is independent of the CBA and continues to apply after its termination notwithstanding any language to the contrary.

46. As of December 31, 2016, Burris ceased to have an obligation to contribute to the NPF because the Agreement expired and Burris did not enter into a successor collective bargaining agreement. This constituted a withdrawal under Title IV of ERISA, but Burris was not required to pay withdrawal liability under Title IV of ERISA. As such, the NPF assessed an Exit Contribution against Burris in the amount of $51,231.76.

47. To date, Burris has failed to pay any portion of the Exit Contribution due to the Fund, despite its obligation to do so under the CBA, the Trust Agreement, and Section 515 of ERISA, 29 U.S.C. § 1145.

48. Pursuant to Article V, Section 6(g) of the Trust Agreement, an Exit Contribution is a type of contribution that an employer is obligated to pay under the Trust Agreement. As such, an employer's failure to make an Exit Contribution constitutes a delinquency and is treated in the same manner as any other delinquent contribution. Accordingly, Burris owes interest on the unpaid Exit Contribution in the amount of $2,744.89 (through November 8, 2019) and liquidated damages in the amount of $10,246.35. While the Exit Contribution remains unpaid, interest continues to accrue on the delinquent Exit Contribution.

49. Burris and KBWB are alter egos and/or constitute a single employer. As such, KBWB is jointly and severally liable for the audit amounts due.

50. Under Section 502(g) of ERISA, 29 U.S.C. § 1132(g) and the Trust Agreement, Plaintiffs are entitled to recover all costs of this action from Defendants, including reasonable attorneys' fees and court costs.

51. Prior to commencing this lawsuit, the Funds sent letters and attempted to directly contact Defendants to obtain the outstanding Exit Contribution. Defendants have not responded to the NPF's correspondence.

52. Defendants' continued failure to pay the amounts due have caused irreparable harm to the plan participants in the form of loss of earnings and expenses of the NPF, endangered the eligibility of covered members' pension benefits, and other harm. Defendants' failure and refusal to comply with their obligations creates an atmosphere in the industry that encourages other employers to do the same

**WHEREFORE**, Plaintiffs request a judgment against Defendants for all amounts due to the Funds as follows:

1. Declare that Burris and KBWB are alter-egos and/or constitute a single employer and are joint and severally liable for each other's debts;

2. Declare that Burris and KBWB are delinquent in remitting owed contributions to the Funds pursuant to the Agreement and Trust Document;

3. Enter judgment against KBWB for the prior judgment against Burris in the amount of $44,577.88, plus post judgment interest;

4. Require Defendants to satisfy the prior judgment against Burris;

5. Award NPF a judgment for Defendant's delinquent Exit Contribution in the amount of $51,231.76;

6. Enter judgment against Defendant for interest on the Exit Contribution at a rate of 0.0233% per day, compounded daily, from the date due until the date paid or the date of the judgment in the amount of at least $2,744.89;

7. Enter judgment against Defendant for liquidated damages in an amount equal to the greater of interest on the Exit Contribution calculated at the above rate, or 20% of the Exit Contribution in the amount of at least $10,246.35;

8.      Enter judgment against Defendants for all attorneys' fees and costs incurred by the Funds in pursuing the delinquent amounts as provided by Section 502(g) of ERISA; and

9.      Award such other relief as the Court deems just and proper.

Respectfully Submitted,

_____/s/ Diana M. Bardes_____
Diana Bardes (Bar No. 81831)
Mooney, Green, Saindon, Murphy & Welch, P.C.
1920 L Street, NW, Suite 400
Washington, D.C. 20036
(202) 783-0010
(202) 783-6088 facsimile
dbardes@mooneygreen.com
Counsel for Plaintiff Funds

Dated: November 26, 2019

## CERTIFICATE OF SERVICE UNDER 29 U.S.C. § 1132(h)

I hereby certify that on this 26th day of November, 2019, a true and correct copy of the foregoing COMPLAINT UNDER ERISA FOR CONTRIBUTIONS, INTEREST, LIQUIDATED DAMAGES, ATTORNEYS FEES, AND COSTS was served via certified mail on:

U.S. Department of Labor
Attn: Assistant Solicitor for Plan Benefits Security
200 Constitution Ave., N.W.
Washington, DC 20002

U.S. Department of Treasury
Attn: Secretary of the Treasury
1500 Pennsylvania Avenue, NW
Washington, D.C. 20220

                                                  /s/ Diana M. Bardes
                                                  Diana M. Bardes