**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

|  |  |  |
|---|---|---|
| | ) | |
| BOARD OF TRUSTEES, SHEET METAL | ) | |
| WORKERS' NATIONAL PENSION FUND, | ) | |
| *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:19-cv-1499 (RDA/TCB) |
| | ) | |
| BURRIS CONSTRUCTION COMPANY, | ) | |
| LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**REPORT AND RECOMMENDATION**

THIS MATTER is before the Court on Plaintiffs' Motion for Default Judgment (Dkt. 8).[1]

For the reasons articulated below, the undersigned U.S. Magistrate Judge recommends that the

Court grant Plaintiffs' motion.

I. BACKGROUND

**A.      Procedural Posture**

Plaintiffs, the respective Boards of Trustees for the Sheet Metal Workers' National

Pension Fund ("NPF"); International Training Institute for the Sheet Metal and Air Conditioning

Industry; Sheet Metal Occupational Health Institute Trust; Sheet Metal Workers' International

Association Scholarship Fund; and the National Energy Management Institute Committee

(collectively, "the Funds" or "Plaintiffs"), filed this lawsuit on November 26, 2019 against

---

[1] The relevant filings before the Court include Plaintiffs' Complaint ("Compl.") (Dkt. 1);
Plaintiffs' Motion for Default Judgment ("Mot. Default J.") (Dkt. 8); Brief in Support of
Plaintiffs' Motion for Default Judgment ("Mem. Supp.") (Dkt. 9); Declaration of Kenneth
Anderson Jr. ("Anderson Decl.") (Dkts. 9-1, 9-2); Declaration of Diana M. Bardes ("Bardes
Decl.") (Dkt. 9-3); and all attachments and exhibits submitted with those filings.

Defendants Burris Construction Company, LLC ("Burris") and KBWB Construction Company, LLC ("KBWB") (collectively, "Defendants") pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), *as amended*, 29 U.S.C. §§ 1332(a)(3), (d)(1), (g)(2), and 1145, and the Labor Management Relations Act of 1947 ("LMRA"), *as amended*, 29 U.S.C. § 185. (Compl. ¶ 1; Mot. Default J. ¶ 1.) The Funds seek to collect a monetary judgment consisting of delinquent contributions, accrued interest, liquidated damages, and attorneys' fees and costs pursuant to ERISA, the LMRA, a collective bargaining agreement ("CBA") between Burris and the International Association of Sheet Metal, Air, Rail, and Transportation Workers, formerly known as the Sheet Metal Workers' International Association, Local Union No. 27 ("Local 27"), and the Trust Document governing the Funds. (Compl. ¶ 1; Mem. Supp. at 1.) Further, because the Court entered a prior judgment against Burris in 2017, Plaintiffs request that the Court enter that judgment against KBWB as well. (Anderson Decl. ¶ 1; Compl. ¶¶ 36-41.)

Defendants have failed to appear in this matter or otherwise respond to Plaintiffs' Complaint. (Mot. Default J. ¶ 3.) After the Clerk entered default against Defendants on December 31, 2019 (Dkt. 6), Plaintiffs filed the instant motion, accompanying memorandum, declarations, and supporting documentation (Dkts. 8-9). When Defendants failed to appear at the hearing before the Court on February 7, 2020 (Dkt. 12), the Court took this matter under advisement to issue this Report and Recommendation.

### B.    Jurisdiction and Venue

Before the Court can enter default judgment, it must have (1) subject-matter jurisdiction, (2) personal jurisdiction, and (3) proper venue.

First, the undersigned finds that this Court has proper subject-matter jurisdiction. A federal district court has subject-matter jurisdiction over ERISA and LMRA actions pursuant to

the jurisdictional provisions in both statutes. *See* 29 U.S.C. § 1132(e)-(f) (conferring jurisdiction on the federal district court in the judicial district "where the plan is administered," regardless of the amount in controversy); 29 U.S.C. § 185(c) (conferring jurisdiction in cases by labor organizations on the federal district court in the judicial district where the labor organization "maintains its principal office" or in which "its duly authorized officers or agents are engaged in representing or acting for employee members"). Further, a federal district court has original jurisdiction over a civil action "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. In this case, Plaintiffs asserted claims pursuant to ERISA and the LMRA, both of which are federal statutes. (*See* Compl. ¶ 1.) Furthermore, the Funds are administered in Fairfax, Virginia. (*Id.* ¶¶ 3, 5-9.) This Court accordingly has subject-matter jurisdiction over the claims in this action.

Second, this Court has personal jurisdiction over Defendants. Due to ERISA's nationwide service of process provision, personal jurisdiction is proper if the defendants have sufficient national contacts with the United States and it comports with the Fifth Amendment. *See* 29 U.S.C. 1132(e)(2); *Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 443-44 (4th Cir. 2015) (citation omitted) ("Where a defendant has been validly served pursuant to a federal statute's nationwide service of process provision, a district court has personal jurisdiction over the defendant so long as jurisdiction comports with the Fifth Amendment."); *see also Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. McD Metals, Inc.*, 964 F. Supp. 1040, 1045 (E.D. Va. 1997). Here, as discussed more below, Plaintiffs served Defendants pursuant to Federal Rule of Civil Procedure 4 and ERISA's nationwide service of process provision. (*See* Dkt. 4.) Further, Defendants are incorporated in New Jersey and their principal places of business are in Moorestown, New Jersey. (Compl. ¶¶ 11-12.)

Therefore, Defendants have sufficient national contacts with the United States and this Court has personal jurisdiction over them.

Lastly, the undersigned finds that venue is proper in this Court. For ERISA and LMRA actions, venue is proper in the federal judicial district where the plan is administered. *See* 29 U.S.C. § 1132(e)(2) ("Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered."); 29 U.S.C. § 185(c) (in proceedings brought by labor organizations, "district courts shall be deemed to have jurisdiction. . . in the district in which such organization maintains its principal office"). Here, venue is proper because the Funds are administered within the Eastern District of Virginia. (Compl. ¶¶ 3, 5-9; Anderson Decl. ¶ 4.) Moreover, venue is proper in a federal judicial district in which a substantial part of the events or omissions giving rise to the action occurred. *See* 28 U.S.C. § 1391(b)(2). Here, venue is also proper in this Court because a substantial part of the events giving rise to Plaintiffs' claims occurred in this district. (*See* Compl. ¶ 3.)

### C.      Service of Process

Lastly, before the Court can render default judgment, it must be satisfied that the defaulting parties have been properly served. Here, on November 27, 2019, Plaintiff's process server served both Defendants by giving the summons, Complaint, and related materials to Lisa Baker, the "Office Manager/Authorized Agent," who was designated to accept service of process on behalf of Defendants, at 1253 Glen Avenue, Moorestown, New Jersey 08057. (Dkt. 4; Mot. Default J. ¶ 2.) The undersigned finds that Plaintiff's service comports with Federal Rule of Civil Procedure 4(c) and (h)(1)(B), and therefore Defendants were properly served.

II. FINDINGS OF FACT AND PROPOSED FINDINGS OF LAW

When a defendant has defaulted, the well-pleaded allegations of facts set forth in the plaintiff's complaint are deemed admitted. *JTH Tax, Inc. v. Grabert*, 8 F. Supp. 3d 731, 736 (E.D. Va. 2014) (citing *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)). However, the defaulting party is not deemed to admit conclusions of law or "allegations regarding liability that are not well-pleaded." *Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 540 (D. Md. 2011) (internal quotation marks and citations omitted)). Consequently, before entering default judgment, the Court must evaluate the plaintiff's complaint against the standards of Federal Rule of Civil Procedure 12(b)(6) to ensure that the complaint properly states a claim upon which relief can be granted. *GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) (citations omitted).

Based on the Complaint, Plaintiffs' Motion for Default Judgment and the supporting Memorandum, the Declaration of Kenneth Anderson Jr., the Declaration of Diana M. Bardes, and the supporting documents submitted with these filings, the undersigned makes the following findings of fact and proposed findings of law.

### A.    The Parties

Plaintiffs are either employee-benefit plans/trust funds within the meaning of ERISA or joint labor-management organizations that provide benefits to certain collectively-bargained sheet-metal workers. (Compl. ¶¶ 5-9; Anderson Decl. ¶ 4.) The Funds are all administered out of offices located in Fairfax, Virginia. (Compl. ¶¶ 5-9; Anderson Decl. ¶ 4.) Plaintiffs' trustees collectively brought this lawsuit in the name of the respective trusts or plans on behalf of their participants and beneficiaries pursuant to Federal Rule of Civil Procedure 17. (Compl. ¶ 10.)

Defendants Burris and KBWB are two companies incorporated in New Jersey, with their

principal places of business at either 8 East Main Street, Moorestown, New Jersey 08057 or 1253 Glen Avenue, Moorestown, New Jersey 08057. (*Id.* ¶¶ 11-12.) Defendants are employers within the meaning of 29 U.S.C. § 152(2) and 29 U.S.C. § 1002(5) and have engaged in an industry affecting commerce within the meaning of ERISA, 29 U.S.C. §§ 1002(11) and (12). (*Id.*)

**B.      Joint and Several Liability**

Plaintiffs assert that while KBWB is not a signatory to the CBA giving rise to this litigation, as a distinct legal entity from Burris, "KBWB is an alter ego of Burris and thus is obligated to contribute to the Funds for covered employees." (Anderson Decl. ¶ 7; Compl. ¶ 15.) Plaintiffs allege that Burris and KBWB "shared an interrelation of operations, common management, centralized control of labor relations, business purpose, equipment, customers, and common ownership." (Compl. ¶ 16; Anderson Decl. ¶ 9.)

First, the companies share common ownership. (Compl. ¶ 16(a); Anderson Decl. ¶ 9(a).) William Burris, Jr. is a principal officer of Burris and KBWB. (Compl. ¶ 16(a); Anderson Decl. ¶ 9(a), Exs. 4-5.) Since May of 2016, he was the sole owner, officer, and manager of Burris. (Compl. ¶ 16(a); Anderson Decl. ¶ 9(a), Ex. 4.) He is also the co-chief executive officer, co-chairman, and co-owner of KBWB. (Compl. ¶ 16(a); Anderson Decl. ¶ 9(a), Ex. 5.) Second, Burris and KBWB perform the same type of work in the same industry and operate in the same geographic market. (Compl. ¶ 16(b); Anderson Decl. ¶ 9(b).) Third, employees work interchangeably between Burris and KBWB. (Compl. ¶ 16(e); Anderson Decl. ¶ 9(e), Ex. 3 at 55:8-15.) Despite Burris signing the CBA, KBWB submitted remittance reports and contributions to the Funds on behalf of Burris's covered employees. (Compl. ¶ 16(f); Anderson Decl. ¶ 9(f), Exs. 6-7.) Fourth, Defendants share the same corporate address and business

equipment. (Compl. ¶ 16(c)-(d); Anderson Decl. ¶ 9(c)-(d).) Finally, in a previous litigation,[2] William Burris, Jr. testified that (1) KBWB did business as Burris Construction Company; (2) KBWB controlled Burris's employees; (3) KBWB was responsible for the payroll and processing of Burris's employees; (4) Burris was a party to the CBA with Local 27, but its financial records did not reflect the collective bargaining obligations and liabilities; and (5) the obligations under the CBA belonged to KBWB. (Compl. ¶ 16(g); Anderson Decl. ¶¶ 8, 9(g), Ex. 3.) Ultimately, Plaintiffs allege that Burris established KBWB to evade its obligations under the CBA with Local 27. (Compl. ¶ 17; Anderson Decl. ¶ 10.)

To determine whether a company is an alter ego under Fourth Circuit law, the Court must ask (1) whether the entities are "substantially the same" or if the "same entity controls both the old and new employer"; and, if yes, (2) "whether the transfer resulted in an expected or reasonably foreseeable benefit to the old employer related to the elimination of its labor obligations." *Alkire v. NLRB*, 716 F.2d 1014, 1020 (4th Cir. 1983); *see also, e.g.*, *Bd. of Trs., Nat'l Stabilization Agreement of the Sheet Metal Indus. Tr. Fund v. Gillis Sheet Metal, Inc.*, No. 1:10cv33 (TSE/TRJ), 2010 WL 4025033, at *2 (E.D. Va. Sept. 21, 2010).

The undersigned finds that KBWB is an alter ego of Burris under this test. First, the companies are "substantially identical" in that they share the same ownership, employees, corporate address, equipment, customers, industry, and geographic region. (*See* Compl. ¶ 16; Anderson Decl. ¶ 9.) The Court therefore finds that Burris and KBWB are substantially the same. Second, Burris received a benefit by creating a second company not subject to its collective bargaining obligations. Burris was able to conduct the same work while disregarding its payment

---

[2] Plaintiffs submitted relevant excerpts from William Burris, Jr.'s sworn deposition testimony from a separate litigation, *Board of Trustees, Sheet Metal Workers' National Pension Fund v. Burris Construction Co.*, No. 2:17-mc-310-WHW (D.N.J.), taken on December 11, 2018. (*See* Anderson Decl., Ex. 3.)

obligations pursuant to the CBA, therefore saving money. The creation of KBWB resulted in an expected—or at least reasonably foreseeable—benefit to Burris. *See, e.g.*, *Bd. of Trs., Nat'l Stabilization Agreement of the Sheet Metal Indus. Tr. Fund v. Gillis Sheet Metal, Inc.*, No. 1:10-cv-00943 (LO/IDD), 2011 WL 1558701, at *5 (E.D. Va. Mar. 21, 2011). Therefore, as an alter ego, KBWB is also an employer within the meaning of 29 U.S.C. § 152(2) and 29 U.S.C. § 1002(5) and bound by the CBA with Local 27. (Compl. ¶ 18; Anderson Decl. ¶ 11.) Accordingly, the undersigned finds that Burris and KBWB should be held jointly and severally liable for any judgment entered by this Court.

### C.   Prior Judgment Against Burris

Burris remains liable on a previous judgment entered by this Court. Accordingly, Plaintiff requests that this Court enter that prior judgment against KBWB. (Mot. Default J. ¶ 5.)

In December of 2016, the Funds filed a lawsuit against Burris for unpaid contributions, interest, and liquidated damages for the period between April of 2014 and November of 2016. (Compl. ¶ 31; Anderson Decl. ¶ 21. *See generally* Complaint, *Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Burris Constr. Co.*, No. 1:16-cv-01595 (LO/JFA) (E.D. Va. Dec. 22, 2016), ECF No. 1.) Burris failed to appear or respond in that matter, and the Court entered default judgment against Burris on June 21, 2017 in the amount of $44,577.88. (Compl. ¶¶ 32-33; Anderson Decl. ¶ 22; *see Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Burris Constr. Co.*, No. 1:16-cv-1595, 2017 WL 2703681, at *1 (E.D. Va. June 21, 2017).) Burris never appealed the judgment. (Compl. ¶ 33; Anderson Decl. ¶ 22.) Burris also never paid any amount of the judgment. (Compl. ¶ 34; Anderson Decl. ¶ 23.) Accordingly, the entire amount of the judgment, plus post-judgment interest, remains outstanding. (Compl. ¶ 34; Anderson Decl. ¶ 23.) Because KBWB is an alter ego of Burris, the undersigned finds that this Court should also enter

judgment against KBWB in the amount of $44,577.88, plus additional interest from the date of judgment through the date of payment.

### D.     Defendants' Obligations

#### 1.     *Defendants' Payment Obligations*

At the relevant times, Burris (and therefore its alter ego, KBWB) was a member of the Sheet Metal Contractors Association of Central and Southern New Jersey and Associated Roofers (the "Association"). (Anderson Decl. ¶ 5.) The Association entered into CBAs with Local 27, which represented Burris' employees for purposes of collective bargaining. (*Id.*; Compl. ¶ 13.) Local 27 is a labor organization representing employees in an industry affecting interstate commerce. (Compl. ¶ 13.) The first CBA (covering building trades work) was effective from June 1, 2015 to May 31, 2018. (Anderson Decl. ¶ 5, Ex. 1.) The second CBA (covering light commercial work) was effective between September 1, 2015 through May 31, 2017. (Anderson Decl. ¶ 5, Ex. 2.) Pursuant to these CBAs, Burris had to submit monthly remittance reports and fringe benefit contributions to the Funds for all hours worked or paid on behalf of their covered employees within the jurisdiction of Local 27. (Compl. ¶ 14; Anderson Decl. ¶ 6, Exs. 1-2.) Moreover, Defendants were obligated to abide by the terms and conditions of the Trust Agreements establishing the Funds, as well as any policies or procedures adopted by the Funds (collectively, the "Trust Document"). (Compl. ¶ 19; Anderson Decl. ¶ 12, Exs. 1-2, 8.)

Here, Defendants were first obligated to pay an exit contribution to the NPF pursuant to the CBA, Trust Document, ERISA, and the LMRA. By signing a CBA with the NPF, an employer agrees to pay an exit contribution to the Fund under certain conditions. (Compl. ¶ 24; Anderson Decl. ¶ 14.) Specifically, the Trust Document provides that any participating employer is liable for an exit contribution if it (1) ceases to have an obligation to contribute to the NPF and

9

(2) had an "event of withdrawal under Title IV of ERISA as a result of the cessation of its obligation to contribute but was not required to pay withdrawal liability under Title IV of ERISA." (Compl. ¶ 23; Anderson Decl. ¶ 14, Ex. 8.) This obligation exists independent of a CBA and continues to exist even after termination of a CBA. (Compl. ¶ 24; Anderson Decl. ¶ 15, Ex. 8.) In other words, if a CBA expires and the employer is no longer required to pay contributions to the NPF, and the employer never entered into a successive CBA, the employer is obligated to pay an exit contribution. (Compl. ¶¶ 24-25; Anderson Decl. ¶¶ 15-16, Ex. 8.)

The exit contribution is equal to the amount of the employer's contributions due for the thirty-six (36)-month period preceding the month in which the employer's obligation ceased. (Compl. ¶ 26; Anderson Decl. ¶ 17, Ex. 8.) An employer must pay the exit contribution no later than the twentieth day of the month following the month in which the Fund assessed the contribution and sent a written demand for payment. (Compl. ¶ 27; Anderson Decl. ¶ 18, Ex. 8.) An employer's failure to timely pay an exit contribution is treated like any other delinquent contribution under the Trust Document. (Compl. ¶ 28; Anderson Decl. ¶¶ 19, 27, Ex. 8.)

Second, under the CBA, Trust Document, ERISA, and the LMRA, if Defendants fail to timely submit a required contribution (including an exit contribution), and the Funds file a lawsuit to recover the unpaid contributions, Defendants are contractually obligated to pay the following:

(1)     Interest on the delinquent contributions at a rate of 0.0233% per day, compounded daily until paid;

(2)     Liquidated damages equal to the greater of (i) $50.00 or (ii) ten percent (10%) of the contributions paid after the due date for payment of such contributions, but before litigation is initiated;

(3)     Liquidated damages equal to the greater of (i) interest on the delinquent contributions at the above rate or (ii) twenty percent (20%) of the delinquent contributions owed upon commencement of litigation; and

(4)     The attorneys' fees and costs incurred by the Funds in pursuing the delinquent amounts, including the attorneys' fees and costs in this action.

(Compl. ¶ 29; Anderson Decl. ¶ 20.)

ERISA further provides that an employer "who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a [CBA] shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. When an employer fails to make required contributions due under a CBA, ERISA outlines the damages that a court must impose on the employer. 29 U.S.C 1132(g)(2). Specifically, the Court "shall" award:

(A) the unpaid contributions,
(B) interest on the unpaid contributions,
(C) an amount equal to the greater of—
> (i) interest on the unpaid contributions, or
> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
(E) such other legal or equitable relief as the court deems appropriate.

*Id.* Lastly, the LMRA also provides that federal courts can provide redress for an employer's breach of a CBA. *See* 29 U.S.C. 185(a). The LMRA provides for the enforcement of labor contracts—including provisions for interest and liquidated damages provided for by a CBA or a trust agreement incorporated into the CBA—that go beyond what ERISA expressly authorizes. *See Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. DCI Signs & Awnings, Inc.*, No. 1:08cv15 (JCC), 2008 WL 640252, at *3 (E.D. Va. Mar. 5, 2008) (citing *Keffer v. H.K. Porter Co.*, 872 F.2d 60 (4th Cir. 1989)). In other words, between ERISA and the LMRA, Plaintiffs can sue to enforce the terms of the CBAs and obtain relief for Defendants' nonpayment.

2.      *Defendants' Unpaid Contributions*

Despite the obligations outlined above, the undersigned finds that Defendants failed to

submit the required exit contribution to the Funds under the terms of the CBA and Trust

Document. (Mot. Default J. ¶ 4; Compl. ¶¶ 35, 42-48; Anderson Decl. ¶ 25-27.) Specifically,

Plaintiffs allege that Burris's obligation to pay contributions to the NPF ceased on December 31,

2016 because its CBA with the NPF expired, and it never entered into a successive CBA.

(Anderson Decl. ¶ 25.) This constituted an " event of withdrawal" under Title IV of ERISA, but

Burris was not required to pay withdrawal liability under ERISA. (*Id.*) Therefore, Burris was

required to pay an exit contribution totaling $51,231.76. (*Id.*) On March 1, 2019, the NPF

notified Defendants of the exit contribution assessment and demanded payment by April 20,

2019 (the twentieth day of the month following the month in which the NPF assessed the

contribution). (*Id.* ¶ 26, Ex. 9.) Burris never paid the exit contribution. (*Id.*)

Because Burris failed to pay, Plaintiff are also entitled to interest and liquidated damages

pursuant to ERISA and the Trust Document, which treats an exit contribution like any other

delinquent contribution within the meaning or ERISA. (*Id.* ¶ 27; Mem. Supp. at 15; *see also Bd.*

*of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Four-C-Aire, Inc.*, 929 F.3d 135, 147 n.15

(4th Cir. 2019) (treating an exit contribution as any other delinquent contribution under ERISA)).

Accordingly, Plaintiffs allege that they are entitled to:

(1)      $51,231.76 in Defendants' unpaid exit contribution pursuant to 29 U.S.C. §§ 1132
         and 1145, and 29 U.S.C. § 185;
(2)      $3,148.84 in interest calculated at the rate of 0.0233% per day, compounded
         daily, on the delinquent contributions (through January 31, 2020) pursuant to 29
         U.S.C. §§ 1132 and 1145, and 29 U.S.C. § 185;
(3)      $10,246.35 in liquidated damages on the unpaid exit contribution pursuant to 29
         U.S.C. §§ 1132 and 1145, and 29 U.S.C. § 185.

(Mot. Default J. ¶ 6; Compl. ¶ 48; Anderson Decl. ¶¶ 25-27.) These amounts total $64,626.95.

#### F.      Attorneys' Fees and Costs

Lastly, Plaintiffs seeks attorneys' fees and costs in the total amount of $6,235.22 pursuant to ERISA, 29 U.S.C. § 1132(g)(2), and the Trust Document. (Compl. ¶ 50; Mot. Default J. ¶ 7; Bardes Decl. ¶ 4; *see* 29 U.S.C. § 1132(g)(2) ("[T]he court shall award the plan . . . reasonable attorney's fees and costs of the action, to be paid by the defendant.").) Plaintiffs seek this amount based on (1) $5,446.00 in attorneys' fees and (2) $789.22 in costs. (Bardes Decl. ¶¶ 5-6.)

First, Plaintiffs seek $5,446.00 in attorneys' fees based on 25.4 hours of billable work. (*Id.* ¶ 5.) In this matter, partners billed prelitigation rates of $250.00 per hour and litigation rates of $275.00 per hour. (*Id.* ¶ 5.) Associates billed at a rate of $200.00 per hour. (*Id.*) Lastly, paralegals billed prelitigation rates of $140.00 per hour, and litigation rates of $150.00 per hour. (*Id.*) Counsel spent time drafting and filing the complaint, arranging for service of process, drafting and filing the clerk's entry of default, and drafting the instant motion and supporting documents. (*Id.*) In support of this request, Plaintiffs' counsel submitted an itemized chart outlining the legal services performed, the attorney who performed the services, and the time spent on each item. (*Id.*, Ex. 1.) Upon review of the submitted billing entries, the undersigned finds that the number of hours counsel expended on the matter is reasonable. Further, the undersigned finds that the hourly rates are consistent with reasonable rates charged in the Eastern District of Virginia for like matters. (*See id.* ¶¶ 8-10, Exs. 2-4.)

Second, Plaintiffs seek $789.22 in costs, which include (1) $382.22 in process-server fees, (2) $400.00 in filing fees, and (3) $6.00 in copying costs. (*Id.* ¶ 6.) Upon review of counsel's submissions, the undersigned finds it appropriate to award Plaintiffs' requested attorneys' fees and costs.

IV.  REQUESTED RELIEF

As outlined above, Plaintiffs request that the Court (1) enter default judgment against Defendants Burris and KBWB; (2) enter this Court's prior judgment against Burris of $44,577.88, plus additional interest from the date of judgment through the date of payment, against KBWB; and (3) enter judgment against Defendants Burris and KBWB in the amount of $64,626.95, consisting of:

- $51,231.76 in Defendants' unpaid exit contribution;
- $3,148.84 in interest calculated at the rate of 0.0233% per day, compounded daily, on the delinquent contributions (starting from January 31, 2020);
- $10,246.35 in liquidated damages on the exit contribution;

and (4) grant Plaintiffs $6,235.22 in attorneys' fees and costs. (Mot. Default J. ¶¶ 5-7.)

V. RECOMMENDATION

Upon review of the entire record in this matter, the undersigned recommends that the Court enter an order (1) granting Plaintiff's Motion for Default Judgment against Burris and KBWB; (2) entering judgment in the amount of $44,577.88 against KBWB, plus additional interest from the date of judgment through the date of payment;[3] (3) entering judgment against Defendants in the amount of $64,626.95, consisting of Defendants' exit contribution, accrued interest, and liquidated damages, to be paid jointly and severally by Burris and KBWB; and (4) entering judgment against Defendants for $6,235.22, consisting of Plaintiffs' attorneys' fees and costs incurred in pursuing this matter, to be paid jointly and severally by Burris and KBWB.

---

[3] As discussed *supra*, the undersigned recommends entering this judgment solely against KBWB because this Court already entered judgment in this amount against Burris.

## VI. NOTICE

The parties are advised that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of its service. Failure to object to this Report and Recommendation waives appellate review of any judgment based on it.

_____ /s/ _____
THERESA CARROLL BUCHANAN
UNITED STATES MAGISTRATE JUDGE

February 25, 2020
Alexandria, Virginia